Filed 6/4/13  139 S. Occidental Blvd. v. Ha CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| 139 S. OCCIDENTAL BLVD., LLC, | B224218 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC357685) |
| v. | |
| JAMES HA et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of Los Angeles County, John Shook, Judge.  Dismissed in part; affirmed as modified in part.

Law Offices of Sean Chandra, Sean Chandra; Law Office of Mansfield Collins and Mansfield Collins for Defendant and Appellant James Ha.

Reyes & Barsoum and Jorge H. Reyes for Defendant and Appellant Nam Kyung Cho.

Law Offices of Larry Fabrizi, Larry Fabrizi; Park & Lim and S. Young Lim for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendants James Ha[1] (Ha) and Nam Kyung Cho (Cho) appeal from a judgment entered in favor of plaintiff 139 S. Occidental Boulevard, LLC (the LLC).[2] We affirm the judgment as modified and dismiss Cho's appeal.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In May 2004, Ha made an offer to purchase the property located at 139 S. Occidental Boulevard in Los Angeles (the property). Ha wanted to demolish the apartment building existing on the property and replace it with a 40-unit condominium complex.

On June 3, 2004, Ha entered into escrow to purchase the property. At some point, Ha decided that the project would be financed and owned by a limited liability company that he would form and for which he would solicit investors. On June 15, Ha filed the LLC's articles of incorporation.

By February 2, 2005, all members of the LLC had executed the LLC's operating agreement, which specified the LLC's purpose was the development and sale of the property. The initial members of the LLC were Louie Young Development Company

---

[1]     Ha is also known and identified in the appellate record as In Bong Ha.

[2]     Defendant Louie Young Development Company also appealed from the judgment. Following its default, this court dismissed its appeal pursuant to California Rules of Court, rule 8.140(b).

[3]     As we explain in greater detail in the legal discussion, Cho's opening brief is deficient in both form and substance and warrants the dismissal of her appeal. We disregard all factual and procedural statements contained therein that are not support by citations to the record on appeal. (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 846; *Gotschall v. Daley* (2002) 96 Cal.App.4th 479, 481, fn. 1.) Ha's opening brief is also deficient in certain particulars.

(LYDC), Ha, Hyon Sam Yi, Hyon Mi Yi, Donna Lee Faure, Jonathan Kim, Brian Choe, Maryann K. Lee and Cho. Hyon Sam Yi, Donna Lee Faure, Jonathan Kim, and Maryann K. Lee were members of Hyon Mi Yi's family, and Brian Choe was a family friend.

The operating agreement designated Ha as the LLC's sole manager. In this capacity, Ha was responsible for real property ownership, management and proposed development. On February 14, 2005, Ha opened a bank account in the name of the LLC with an initial deposit of $150,000, which was provided by members other than Ha and Cho. The bank account, as well as the LLC operating agreement, required that any check over $10,000 be signed by both Ha and Hyon Mi Yi.

By February 17, 2005, Hyon Mi Yi, Hyon Sam Yi, Jonathan Kim, Donna Lee Faure, Brian Choe, and Maryann Lee had tendered, in full, their initial capital contributions.

On February 17, 2005, escrow on the property closed in Ha's name alone. The purchase price of $1,775,000 included the LLC members' capital contributions totaling $891,000. None of this money was contributed by Cho.

Within 15 days after opening the LLC bank account, Ha wrote seven checks to himself totaling $60,000. Each check, however, was written for an amount less than $10,000. Ha claimed he had borrowed $50,000 from his brother-in-law in order to close escrow and withdrew the $60,000 in order to repay him.

On April 25, 2005, Cho tendered $216,065.29 to Ha as part of a 1031 exchange for which Ha, in turn, grant deeded her a 12.5 percent interest in the property. Ha did not deposit this money into the LLC's bank account. Rather, he deposited these funds into his personal account. No contract authorized Ha or LYDC to keep Cho's $200,000.

Almost two months later on June 21, 2005, Ha and Cho quitclaimed the property to the LLC. On June 16, Ha and Cho signed an affidavit regarding the lack of consideration given and received for transferring ownership of the property to the LLC.

It was not until sometime in 2006 that LLC members Hyon Mi Yi, Hyon Sam Yi, Jonathan Kim, Donna Lee Faure, Brian Choe, and Maryann Lee first met or spoke with Cho.

3

Eventually, dissension arose amongst some of the members of the LLC. On July 15, 2006, Ha was voted out as the LLC's managing member. Believing that Ha had breached his managerial duties and mishandled the LLC's funds, the LLC instituted this action in August 2006.

The LLC filed its third amended complaint against Ha, LYDC and Cho on December 19, 2008,[4] alleging causes of action for breach of fiduciary duty (first), breach of contract (second), fraud (third), constructive fraud (fourth), accounting (fifth) against Ha, as well as a cause of action for declaratory relief against Cho (sixth). The LLC later requested dismissal of the third cause of action for fraud against Ha. That cause of action was dismissed on September 18, 2009.

On November 16, 2009, while trial was ongoing, the LLC requested leave to amend the third amended complaint to conform to proof adduced at trial. Specifically, the LLC sought to add a seventh cause of action for declaratory relief against Ha, an eighth cause of action for money had and received against Ha and LYDC and a ninth cause of action for breach of contract by a third party beneficiary against Ha. The trial court granted the LLC's motion, and on December 23, 2009, the LLC filed its operative fourth amended complaint to conform to proof.

On February 18, 2010, the trial court signed and filed its 48-page statement of decision. It found in favor of the LLC and against Ha and/or Cho on all of its causes of action.

---

**4**      Neither defendant has seen fit to chronicle the procedural history of this case from its inception in August 2006, which included the filing of a second-amended cross-complaint by Ha and LYDC against the LLC, Cho and members of the LLC and a cross-complaint filed by Cho which ultimately was dismissed. Following the dismissal of Ha and LYDC's second amended cross-complaint, the trial court ordered them to pay cross-defendants, Hyon Mi Yi, Brian Choe, Hyon Sam Yi, Donna Lee Faure and Jonathan Kim, attorney's fees. Ha filed a notice of appeal from the order awarding attorney's fees. We affirmed the order in an unpublished opinion filed on January 6, 2010 (*Ha v. Hyon Mi Yi et al.*, B214212).

4

With respect to the LLC's first cause of action for breach of fiduciary duty against Ha, the trial court found that the LLC did not modify Ha's fiduciary duties as set forth in Corporations Code section 17005, subdivision (d), that Ha owed the LLC a fiduciary duty while acting as its manager, that Ha failed to meet his burden of proving he did not breach his fiduciary duty and that the LLC sustained damages as a result of Ha's breaches of his fiduciary duty.

As to the LLC's second cause of action for breach of contract and its ninth cause of action for breach of contract by a third party beneficiary, both against Ha, the trial court found that Ha breached the operating agreement, entitling the LLC to damages.

The trial court further found that, as to the LLC's fourth cause of action for constructive fraud, Ha was liable to the LLC for constructive fraud. The court found that Ha "formed and controlled the LLC to his advantage by misleading the LLC members to their prejudice."

As to the fifth cause of action for an accounting against Ha and LYDC, the court determined that neither Ha nor LYDC provided a total accounting of the LLC's assets and liabilities to the detriment of the LLC.

With regard to the LLC's sixth cause of action for declaratory relief against Cho, the trial court determined that none of Cho's money inured to the benefit of the LLC. Cho did not actually contribute $200,000 to the LLC. As such, she was not entitled to a 12.5 percent membership interest in the LLC. The court reasoned that the property already had been bought and paid for by the time Cho gave Ha her money, none of which was ever deposited into the LLC's bank account, and the "operating agreement had already provided for the no additional consideration transfer of the already paid for property to the LLC." (Underlining deleted.) Specifically, section 1.7 provided "Title to the Property shall be transferred and held in the name of Company with 15 days of execution of this agreement."

On the LLC's seventh cause of action for declaratory relief against Ha, the trial court observed that Ha's initial capital contribution for a 25 percent interest in the LLC

5

was supposed to be $400,000. Ha had only made a $50,000 capital contribution, however. Therefore, he never acquired a 25 percent interest in the LLC.

As for the LLC's eighth cause of action for money had and received against Ha and LYDC, the court determined that Ha and LYDC were alter egos of each other such that the separate nature of each was to be disregarded to prevent injury to the LLC. The court also determined that Ha and LYDC were indebted to the LLC for money had and received for the use and benefit of the LLC.

On March 5, 2010, judgment in favor of the LLC and against Ha and Cho was entered. The judgment ordered Ha to pay the LLC actual damages totaling $362,015.95,[5] plus punitive damages in the amount of $500,000, along with attorney's fees and costs. Judgment was also entered in favor of the LLC and against LYDC for actual damages in the sum of $30,000,[6] punitive damages in the amount of zero and attorney's fees and costs. The court further ordered and decreed that neither Ha nor Cho had an interest in the LLC. With regard to attorney's fees and costs, the judgment provided that the court would adjudicate entitlement to fees if a post-judgment motion for allowance of attorney's fees as part of costs was filed. The LLC subsequently filed such a motion.

---

**5**      This amount was comprised of the following: disgorgement of a $34,120 commission that Ha received in the purchase of the LLC property; $60,000 that he paid to himself from the LLC bank account between March 1 and 4, 2005; $34,118.95 in rental monies received from the tenants of the LLC property for which Ha failed to account or to deposit into the LLC's bank account; $30,000 of LLC monies he paid out without authorization and/or that did not benefit the LLC; $3,777 in LLC monies other than rent not accounted for; and $200,000 from Cho.

**6**      This was the amount paid from the LLC account to LYDC without the required 51 percent consent of the LLC.

## DISCUSSION

### A. *Cho's Appeal*

In the conclusion section of her opening brief, Cho asks this court to reverse the judgment and to order the trial court to enter a new judgment in her favor, declaring her a member of the LLC. She further seeks reversal of an attorney's fee order and asks that she be declared the prevailing party and that the matter be remanded on the issue of attorney's fees. A review of Cho's opening brief, however, quickly reveals its inadequacy in form and substance. Indeed, it is virtually impossible to understand what this case is about or to isolate Cho's legal contentions on appeal.

It is a firmly established principle of appellate jurisprudence that a judgment or order of the trial court is presumed to be correct. On appeal, it is the appellant's burden to demonstrate prejudicial error affirmatively by an adequate record. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.) If the appellant fails to meet this burden, the judgment or order appealed from cannot be disturbed. (See *Bell v. H.F. Cox, Inc.* (2012) 209 Cal.App.4th 62, 80.)

An appellant's opening brief must contain "a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) Any reference to a matter in the appellate record must be supported "by a citation to the volume and page number of the record where the matter appears." (*Id*., rule 8.204(a)(1)(C); *Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694, fn. 1.) Procedural and factual statements that are not supported by citations to the record may be disregarded on appeal. (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.*, *supra*, 194 Cal.App.4th at p. 846; *Gotschall v. Daley*, *supra*, 96 Cal.App.4th at p. 481, fn. 1.)

Legal arguments made in an appellate brief must be supported by citations to appropriate legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) A conclusionary argument devoid of citation to legal authority is insufficient and may be disregarded. (*Rojas v. Platinum Auto Group, Inc.* (2013) 212 Cal.App.4th 997, 1000, fn. 3; *Dabney v.*

7

*Dabney* (2002) 104 Cal.App.4th 379, 384.) Legal contentions may also be treated as waived if the appellant fails to direct the reviewing court to the portion of the record supporting his legal arguments. (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384.)

Cho's opening brief is chock full of procedural and factual statements that are not supported by references to the appellate record. She also refers to documents and quotes from documents without directing us to the documents' whereabouts in the appellate record. In fact, not once does Cho cite to the five-volume clerk's transcript or the one-volume supplemental clerk's transcript. Although Cho's opening brief contains some citations to the 10-volume reporter's transcript, these citations appear only on two of the 14 pages of her brief. Moreover, they appear to be selective citations to evidence she believes is favorable to her cause. These selective facts are insufficient to provide us with an overview of what this case is about or to allow us to identify her specific contentions on appeal.[7]

At the conclusion of the trial, the trial court signed a 48-page statement of decision. Not once does Cho mention, let alone challenge, any portion of this lengthy document. Thus, while the relief Cho would like is clear, she has utterly and fatally failed to provide us with a road map that would allow us to navigate her opening brief or to reach the result she seeks.

"'We are a busy court which "cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when his brief makes no reference to the pages where the evidence on the point can be found in the record."' [Citation.]" (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.) "It is the duty of counsel to refer us to the portion of the record supporting his contentions on appeal. [Citations.] 'It is not incumbent upon this court to search a record of this character to determine a point raised in this manner.' [Citations.]" (*Schmidlin v. City of*

---

[7]    Cho did not file a separate reply brief. Although she joined in Ha's reply brief, it does not aid Cho.

8

*Palo Alto* (2007) 157 Cal.App.4th 728, 738.) "'If no citation "is furnished on a particular point, the court may treat it as waived." [Citation.]'" (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP*, *supra*, 201 Cal.App.4th 368, 384, quoting *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) Due to the fatal deficiencies in Cho's opening brief, we deem her appeal to be abandoned. (Cf. *108 Holdings, Ltd. v. City of Rohnert Park* (2006) 136 Cal.App.4th 186, 193, fn. 3.)

**B.** *Ha's Appeal*

Ha's opening brief, like Cho's, suffers from some deficiencies. For example, Ha makes numerous references to "TE"s, which we presume to mean "trial exhibits." Although Ha lodged with this court two binders containing documents purporting to be trial court exhibits, the exhibits to which he cites in his opening brief do not correspond by number with those contained in the binders. Stated otherwise, while the binders contain a listing of the actual trial exhibits by number, the order in which the documents appear in the binders bears no correlation to the actual trial court exhibits. It is not our responsibility to search though the multitude of documents supplied by Ha and determine which purported exhibits, if any, support Ha. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89.) Also problematic is Ha's failure to cite to the clerk's transcript or the supplemental clerk's transcript. For example, he cites to the Statement of Decision by its individual page numbers but never once does he cite to the document in the record on appeal. It is the appellant's responsibility to cite to the volume and page number of the appellate record where the matter referred to appears. (*Ibid.*)

With these deficiencies having been pointed out, we proceed to address, as best we can, Ha's contentions on appeal, which for the most part are challenges to the sufficiency of the evidence supporting findings in the statement of decision.[8] As such, we note that a

---

[8] Ha's counsel acknowledged as much during oral argument. Thus, although many of Ha's contentions are that the trial court failed to make certain findings, in actuality he is challenging the sufficiency of the evidence supporting the factual findings actually made on the ground that there was conflicting evidence that would have supported

"statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) "We review the trial court's express factual findings in the statement of decision, and any implied findings, for substantial evidence." (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608.) The party attacking the sufficiency of the evidence to support a finding of the trial court "must set forth in his brief all the material evidence bearing on the issue and not merely the evidence favorable to him, and failure to do so may be deemed a waiver of the claimed error. [Citations.]" (*Orange County Flood Control Dist. v. Sunny Crest Dairy, Inc.* (1978) 77 Cal.App.3d 742, 758.)

In examining the sufficiency of the evidence, "we view the evidence and draw all reasonable inferences therefrom in support of the judgment. [Citation.] Credibility of witnesses and weight of the evidence are matters for the trier of fact. [Citation.] We do not substitute our views for those of the trial court. [Citation.]" (*Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 143.)

### 1. Fiduciary Duty

Ha contends the LLC agreed to eliminate the creation of any fiduciary relationship between the LLC, its members and the manager. The trial court found otherwise. In its statement of decision, the trial court observed: "The evidence has shown that an LLC managing member owes fiduciary duties as mandated by statute akin to a partner in a partnership, (Corp. Code, § 17153).

---

findings different than those made by the trial court. As we note below, however, our function on appeal is to determine if the findings actually made are supported by the evidence. "We review the evidence in the light most favorable to the trial court's judgment, and when there is a conflict in the evidence, we draw all reasonable inferences in support of the trial court's finding." (*In re Marriage of E. & Stephen P.* (2013) 213 Cal.App.4th 983, 990.)

"The evidence has shown that the LLC did not modify the Corp[orations] Code fiduciary/statutory duty with any informed consent as is required by Corp[orations] Code [section] 17005[, subdivision ](d). The LLC members testified that Section 3.6,[9] which purported to 'modify' the statutory fiduciary duty was never specifically read by them nor explained to them by anyone, including HA'S attorney on other matters, James Chu, (and attorney Chu did not appear as a witness to contend otherwise). In fact, the operating agreement in Paragraph 3.2D(a) specifically states that a fiduciary duty does exist . . . . Said paragraph states: [¶] 'Managers shall have the fiduciary responsibility for the safekeeping and use of all funds and assets of Company, whether or not in their immediate possession or control. The funds of Company shall not be commingled with the funds of any other person and the Manager shall not employ, or permit any other person to employ, such funds in any manner except for the benefit of Company.' [¶] Additionally, paragraph 3.6 which purports to modify the Corp[orations] Code dates is not a modification attempt. It appears to be a waiver which is not a 'modification' under Corp[orations] Code [section] 17005[, subdivision ](d).

"In any event, even if the fiduciary duty was 'modified' with informed consent and even if Paragraph 3.2D(a) stated above is not considered, HA admits in his trial brief that a fiduciary duty would still exist in cases of fraud, gross negligence, willful misconduct or bad faith . . . .

"The evidence has shown that HA'S actions in breaching of his fiduciary duty were indeed ones of fraud, gross negligence, willful misconduct and in bad faith, and thus a purported modification or waiver is actually a non-issue.

---

**9**    Section 3.6 of the operating agreement provides: "A Manager shall not be liable to Company or Members for any loss or damage resulting from any mistake of fact or judgment or any act or failure to act unless the mistake, act or failure to act is the result of fraud, bad faith, gross negligence or willful misconduct. Managers shall not be fiduciaries of Company or Members."

11

"JAMES HA did not meet the burden of proof imposed upon him by law, to prove that he did not breach his fiduciary duty to Plaintiff and in fact, Plaintiff has affirmatively proven that HA did breach his fiduciary duties.

"The evidence has shown JAMES HA did not act as a partner legally must to a partner (Corp. Code[, §§] 16404 and 17153) nor with the standard of conduct to act in the highest good faith to the Plaintiff that he sought to obtain an advantage over Plaintiff by misconduct, misrepresentation, concealment, threat or adverse process . . . ."

Ha has failed to demonstrate a basis for disturbing the trial court's finding that he owed a fiduciary duty to his co-LLC members. It is not enough for Ha simply to claim that there was no evidence of fraud, coercion, misrepresentation or duress or that certain testimony should not have been believed by the court. Also, his reliance on the evidence suggesting that his co-LLC members did not read the operating agreement before signing is misplaced, in that such evidence does not negate the existence of a fiduciary duty.

### 2. Agency

Spinning the evidence in the light most favorable to himself, Ha characterizes Hyon Mi Yi as the de facto or ostensible agent of her family members and friend and argues that he was entitled to rely on her representations in that capacity. Even if this were true, which we do not decide, Ha makes no effort to demonstrate how this would have changed the end result in this case.

In any event, defendant does not cite to any evidence that would have justified a finding that Hyon Mi Yi had any authority, ostensible or otherwise, to make major decisions on their behalf with regard to the affairs of the LLC. In fact, the trial court found that Hyon Sam Yi and Donna Lee Faure testified that they did not authorize Hyon Mi Yi to vote for them. The court expressly found Hyon Sam Yi's and Donna Lee Faure's testimony to be credible.

### 3. Ha's Capital Contribution

Ha asserts that the LLC agreed that he did not have to contribute all of his capital until the date that building permit fees were due. That is true, but there is more to it. Section 2.2(c) of the LLC's operating agreement required Ha to pay the balance of his initial capital contribution, $343,500, "to the City of Los Angeles to obtain all applicable building permits for the Project Development" when the building permit fees were due. However, "in the event the sum total of building permit fees is less than $343,500, the then remaining balance of Mr. Ha's initial capital contribution shall be paid directly to the Company."

Ha does not dispute, however, that the project was not completed, no building permit fees were ever paid and the project has since been abandoned. Thus, under the terms of the operating agreement, and as the trial court found, he had to pay the LLC $343,500 "in order for him to hold a 25% [interest] in the LLC." Absent such payment, "he cannot have a 25% interest in the LLC."

### 4. Duty to Disclose Commission

Ha realized a commission for himself in the net amount of $34,120 in connection with his purchase of the property. He challenges the trial court's determination that he had a duty to disclose his receipt of a commission to the LLC members and that his failure to fulfill this duty required that he disgorge his commission.

As the trial court aptly found, when escrow closed on February 17, 2005, Ha already had been designated the LLC's manager via the operating agreement. As a fiduciary managing member he was obligated to disclose his commission to the other LLC members. Having failed to do so, the trial court properly ordered that he disgorge his commission. (Cf. *Terry v. Bender* (1956) 143 Cal.App.2d 198, 212.)

### 5. Ha's Loan to the LLC

Ha claims he did not breach any fiduciary duty when he borrowed $50,000 from his brother-in-law, loaned it to the LLC and then repaid it. The trial court did not believe

Ha's claim. With regard to Ha's credibility, the trial court stated it "is highly suspect if it exists at all. He appears to have an initial answer for everything." The court further noted that "[w]ithin days of opening the LLC account with $150,000 of the member's [*sic*] money, [Ha], without authorization, immediately withdrew $60,000 to himself in $10,000 checks . . . . His 'excuse' was that he was paying back $50,000 his brother-in-law Kyung Mok Lee loaned to the LLC to help purchase the property." The court then noted that Ha had offered no credible explanation for taking $60,000 out of the LLC account when the loan was only $50,000. In addition, the court questioned why there was no paperwork memorializing the transaction, why Ha did not simply write his brother-in-law a check for $50,000 from the LLC bank account and why he "clandestinely" cut multiple checks to himself, each under $10,000. We have no basis for disturbing the court's credibility determination or its factual determination that the LLC suffered actual damages of $60,000 as a result of Ha's conduct in withdrawing this money from its account. (*People v. Alexander* (2010) 49 Cal.4th 846, 917 [reviewing court does "'not reweigh evidence or reevaluate a witness's credibility.'"].)

### 6. Delay in Transferring Title

Ha maintains that he acted in good faith and that the LLC suffered no damage as a result of his delay in transferring title of the property to the LLC until Cho's 1031 exchange was complete. Assuming this is true, Ha has failed to demonstrate how the trial court's failure to make a finding on this issue below requires reversal of the judgment.

"'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that is has resulted in a miscarriage of justice.' [Citation.] Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record. 'But our duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a "miscarriage of justice."' [Citation.] . . . 'Where any error is relied on for reversal it is

14

not sufficient for appellant to point to the error and rest there.' [Citation.]" (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial. [Citations.]" (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

### 7. Entitlement to Cho's $200,000

Ha claims that a majority of the LLC members signed a contract on May 18, 2005, with LYDC containing a signing payment of $200,000. Ha claims he was entitled to retain the $200,000 from Cho to satisfy the contract.

In its statement of decision the trial court noted that "Judge Fern found that no such 'contract' was ever entered into, (sustained demurrer without leave to amend heard on September 2, 2008 and judgment for dismissal effective October 8, 2008 — also see Plaintiff's Motion in Limine #1)." The court continued: "After the above purported LLC/LYDC contract was found not to exist by Judge Ferns, JAMES HA then subsequently produced another document (Ex. 246) not previously produced to Judge Ferns as per Judge Ferns order re: the demurrer hearing. Mr. HA testified that he had not given this document to his previous Attorney, Mr. Spolin because he 'couldn't locate it.' Said document was not produced in previous written discovery but rather only at his deposition taken immediately prior to trial. This Court finds that this document (Ex. 246) was fabricated by JAMES HA as evidenced by, among other things, the language itself, an initial only, the Social Security Numbers of members which Mr. HA previously had in his possession; and the identical fax stamp on this fabricated document that existed on a different document (Ex. 148) JAMES HA admitted he had previously received (Ex. 246)." (Underlining omitted.)

Inasmuch as Ha has failed to set forth all relevant evidence related to this contention and has failed to direct our attention to the whereabouts of this contract in the

15

appellate record, we reject his claim. (*Orange County Flood Control Dist. v. Sunny Crest Dairy, Inc.*, *supra*, 77 Cal.App.3d at p. 758.)

### 8. Commingling of Monies and Accounting

Ha next contends he "did not commingle any personal accounts with the 139-LLC bank account." This contention is disingenuous and does nothing to dispel the court's finding that he deposited the $200,000 he received from Cho into his own personal account. The court found incredible Ha's position that Cho's $200,000 belonged to LYDC. Specifically, the court found that Ha "deposited CHO's money into his personal account for his own use in April of 2005. However, the purported 'contract,' supposedly authorizing him to do so, was not signed, according to HA's position, until May of 2006. Ha has failed to demonstrate that the evidence is insufficient to support these factual findings.

Ha also contends that he provided a full accounting of the monies he received and expended and challenges the trial court's finding to the contrary. In its statement of decision, the trial court found that Ha's witness Lynn Kim "testified as a paid expert for HA/LYDC as to 'the accounting practices of James Ha, [LYDC] and [the LLC].' He has been the personal CPA for both HA and LYDC for approximately 4 years. He shares a four-man suite with Mr. HA'S attorney, Mansfield Collins. He introduced Mr. HA to Attorney Collins. He has never testified as an expert before.

"Mr. Kim testified that he only reviewed those documents which were given to him by Mr. HA, all of which he said were contained in Ex. 243. He has admitted that he only reviewed one personal account of Mr. HA and even that one account did not include the bank statements. Mr. HA did not give him those bank statements.

"Mr. Kim's analysis and charts he prepared are contained in Ex. 243, which included and was prefaced by his letter of March 13, 2009 in which he, among other things, distances himself from the reliability of the information contained in the charts. He further admitted that he had no way of knowing, from the documentation provided by Mr. HA which he reviewed, whether JAMES HA actually deposited all the LLC property

16

rent monies into the LLC account. He further admitted that his analysis as to what purportedly benefited the LLC came only from what Mr. HA told him.

"The court does not find Lynn Kim's relevant testimony credible as against Plaintiff."

The court ultimately determined that neither Ha nor LYDC provided a total accounting of the LLC's assets and liabilities, resulting in damage to the LLC. In support of its findings, the court noted that Ha failed to account to the LLC for the $60,000 he withdrew from the LLC account payable to himself between March 1 and 4, 2005, for the $34,118.95 in the LLC rental monies that he received, for the $30,000 paid from the LLC account without the consent of 51 percent of the LLC members as required by the contract, for the $200,000 he received from Cho, for two checks he paid to himself in May 2005 and for one check he paid to 3320 Beverly Boulevard LLC in February 2008.

As with the issue of commingling, Ha has failed to demonstrate any basis to disturb the trial court's factual findings on the accounting issue.

### 9. Hyon Mi Yi's Credibility

Next, Ha challenges the trial court's determination that Hyon Mi Yi was credible, claiming she lied during trial. Determining the credibility of witnesses, even one who is caught in a lie, is the exclusive province of the trier of fact, which in this case was the trial court. We will not disturb the trial court's credibility determination on appeal. (*People v. Alexander*, *supra*, 49 Cal.4th at p. 917.) Moreover, that the trial court did not reach the result desired by Ha does not establish that the court ignored evidence.

### 10. Actual Damages: Cho's $200,000

Ha contends the trial court committed reversible error when it included in its actual damage award the $200,000 from Cho, and still declared that Cho was not a member of the LLC.

Cho purchased a 12.5 percent interest in the property from Ha, who at the time of the purchase was the legal owner of the property. The trial court found that Ha had

17

deposited the $200,000 he received from Cho into his personal account for his own use in April 2005. After Ha transferred that interest to her via a grant deed, Cho and Ha then quitclaimed the property to the LLC.

The trial court rejected as incredible Ha's initial position that the "$200,000 belonged to LYDC pursuant to a 'contract' between the LLC and LYDC" that was not signed until May 2005. We have no basis to disturb the trial court's decision not to believe Ha's version of events. (*People v. Alexander*, *supra*, 49 Cal.4th at p. 917.)

### 11. Punitive Damages

Ha challenges the sufficiency of the evidence supporting the trial court's award of $500,000 in punitive damages. He contends the LLC failed to prove by clear and convincing evidence that it was entitled to such damages. Inasmuch as Ha has failed to set forth all relevant evidence related to this contention in his legal discussion, we deem it waived. (*Orange County Flood Control Dist. v. Sunny Crest Dairy, Inc.*, *supra*, 77 Cal.App.3d at p. 758 [party challenging the sufficiency of the evidence to support a finding "must set forth in his brief all the material evidence bearing on the issue and not merely the evidence favorable to him, and failure to do so may be deemed a waiver of the claimed error"].) Thus, generalized arguments and references to the evidence do not suffice to demonstrate error on appeal.

### C.     *Double Recovery*

As previously noted, the trial court entered judgment in favor of the LLC and against LYDC for $30,000. This sum represents the amount Ha paid from the LLC's account to LYDC without the required authorization of 51 percent of the LLC. The court also entered judgment against Ha and ordered him to pay the LLC actual damages totaling $362,015.95. Included within this sum is $30,000 of LLC monies that Ha paid out without authorization. Thus, it appears the LLC recovered the same $30,000 twice.

At oral argument, the court inquired whether this constituted a double counting of the same $30,000 payment. Counsel for the LLC acknowledged "that may have been"

18

double counting as to that $30,000, in that it was the same amount.  We believe the judgment must be modified accordingly.

## DISPOSITION

Cho's appeal from the judgment is dismissed.  In light of the trial court's determination that Ha and LYDC are alter egos of each other, and in order to eliminate the double counting of the $30,000 each was ordered to pay the LLC, we vacate that portion of the judgment in favor of the LLC and against LYDC in the amount of $30,000.  As modified the judgment is affirmed.  The LLC is awarded its costs on appeal from Cho and Ha.

JACKSON, J.

We concur:

WOODS, Acting P. J.

ZELON, J.

19