Filed 3/4/14; pub. order 3/25/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of TAMMY and RAPHAEL METZGER. | B251861 |
| TAMMY METZGER, | (Los Angeles County Super. Ct. No. ND062399) |
| Respondent, | |
| v. | |
| RAPHAEL METZGER, | |
| Appellant. | |
| _____ | |
| EVE LOPEZ et al., | B252152 |
| Petitioners, | |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| RAPHAEL METZGER, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Thomas Trent Lewis, Judge. Order affirmed. The Petition for Writ of Mandate is dismissed as moot.

Metzger Law Group and Raphael Metzger for Appellant and for Real Party in Interest.

Brandmeyer Gilligan & Dockstader and Brian K. Brandmeyer for Respondent and for Petitioner Tammy Metzger.

Lopez & Grager and Eve Lopez for Petitioners and for Minor.

No appearance for Respondent Superior Court.

———————————————————

Appellant Raphael Metzger (Raphael), former husband of respondent Tammy Metzger (Tammy), appeals from an order appointing counsel to represent the parties' minor daughter, M., in the parties' custody dispute.[1]  On appeal, Raphael contends that the order appointing minor's counsel violated his constitutional rights and was an abuse of discretion.  We disagree and affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Tammy and Raphael were married on November 2, 2003, and their daughter, M., was born the following year.  On July 30, 2009, Tammy filed a petition to dissolve her marriage with Raphael.  The court ordered a separate trial on child custody issues and scheduled trial for May 2011.

On April 12, 2011, Tammy requested a trial continuance in order to give her time to have M. evaluated for developmental delays.  Tammy stated that she had only recently become aware that her daughter might have autism.  Raphael opposed the request for a continuance.  He argued that Tammy had already obstructed the progress of the proceedings by refusing to stipulate to a separate trial on child custody issues, failing to appear for her deposition, and refusing to agree to alternate dates for her deposition, among other actions.  Raphael also argued that Tammy's " 'new' concern about developmental delay has no basis in reality, [wa]s a stall tactic, and fail[ed] to justify a continuance of the trial."

---

[1]  For simplicity and clarity, we refer to the parties by their first names.  We intend no disrespect or undue familiarity.

It appears that the court granted multiple trial continuances.[2] On January 20, 2012, the court entered a judgment of dissolution as to marital status only. The trial on custody issues appears to have begun in early 2013 and was eventually continued to October 21, 2013. In or around August 2013, it appears that Tammy filed a request for an order for an autism evaluation of M. Raphael opposed the request, arguing that M. had already undergone 12 such evaluation sessions.

The court denied Tammy's request and issued an order to show cause as to why Eve Lopez should not be appointed as minor's counsel for M., and why Raphael should not advance $100,000 to minor's counsel as a retainer for her services, $50,000 of which would be chargeable to each party against their share of community property. Lopez has a master's degree in Forensic Psychology as well as a juris doctor degree, and has been appointed as minor's counsel in dozens of cases involving a child with special needs.

Tammy filed a notice of non-opposition to the appointment of minor's counsel. Raphael opposed the order to show cause on the grounds that the appointment of minor's counsel violated his constitutional right to determine his daughter's needs and represent her interests, among other arguments. At the hearing on September 16, 2013, the court noted that the issue of whether M. had autism would affect the court's custody award because, if M. did not have autism, "her mom wants to subject her to a lot of stuff she should not be[] subjected to," and if M. did have autism, "then I need to make sure

_____

2       The appellant's index does not document all the proceedings in the trial court.

4

that she gets the resources that she needs." The court further indicated that he "fe[lt] that [M.] needs someone to speak for her."

Raphael argued that Lopez was unfairly biased because she has an autistic child. The court responded that "[t]here's no evidence but speculation that [Lopez] would be inclined to be biased. And I think what she might be more inclined to be is knowledgeable . . . . I see that she may have more knowledge than the average family law lawyer about matters related to autism spectrum disorder. That's, frankly, why I chose her . . . . " The court issued an order appointing Lopez as minor's counsel "[t]o assist the court in determining the best interests of the child."

Raphael moved ex parte for the "revocation of the appointment of Eve Lopez as minor's counsel," and the court denied the request. Raphael then appealed the order appointing minor's counsel. Lopez filed a petition for writ of mandate seeking to have the appeal dismissed, and Tammy filed a joinder. On November 19, 2013, we issued an order consolidating the appeal and petition for purposes of review by this court.

## CONTENTIONS

Raphael contends that the court violated his constitutional rights and abused its discretion by appointing minor's counsel and ordering Raphael to pay counsel's fees.

## DISCUSSION

1.    *The Role of Minor's Counsel in Custody Disputes*

Family Code section 3150, subdivision (a) provides that "[i]f the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation

5

proceeding, provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 of the California Rules of Court" ("CRC Rules").

CRC Rule 5.240 sets forth specific factors the court should take into account in determining whether to appoint minor's counsel, including whether (1) the issue of child custody is highly contested or protracted, (2) minor's counsel would be likely to provide the court with relevant information not otherwise readily available, (3) knowledgeable counsel is available for appointment, and (4) the best interest of the child appears to require independent representation. CRC Rule 5.241 addresses the proper payment of minor's counsel, and CRC Rule 5.242 addresses the qualifications, rights and responsibilities of minor's counsel.

Family Code section 3151, subdivision (a) provides that "[t]he child's counsel appointed under this chapter is charged with the representation of the child's best interests. The role of the child's counsel is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court . . . . The counsel's duties . . . include interviewing the child, reviewing the court files and all accessible relevant records available to both parties, and making any further investigations as the counsel considers necessary to ascertain evidence relevant to the custody or visitation hearings."

2. *The Court Did Not Violate Raphael's Right to "Advance" His Daughter's Best Interests*

Raphael contends that the order appointing minor's counsel deprived him of "his right as a fit father to determine and advance M.'s best interests" because minor's

counsel was tasked with representing the child's best interests. However, the court's order only appointed minor's counsel for the purpose of providing the court with additional information; it did not preclude the parties from also informing the court what they believe M.'s best interests to be.[3]

Raphael also argues that the court "substituted its own judgment of M.'s best interests for that of [Raphael]" when it ordered him to pay $100,000 to minor's counsel instead of allowing Raphael to use that money for other purposes. Raphael states that he would prefer to use this money for M.'s college education pursuant to his constitutional right to direct and provide for his child's education. In support of this argument, he cites to *Meyer v. Nebraska* (1923) 262 U.S. 390 and *Pierce v. Society of Sisters* (1925) 268 U.S. 510, two cases holding that the application of statutes limiting the kinds of education a child may receive unreasonably interfered with a parent's right to direct the education of his child. The reasoning of those cases does not apply here. The payment of minor's counsel's fees in a custody dispute does not in any way restrict the kind of education a child may receive or affect a parent's right to direct that education.

---

3       Raphael also argues that it was unconstitutional for the trial court "to give M. a voice" because, pursuant to *Parham v. J. R.* (1979) 442 U.S. 584, children may not "receive independent consideration 'absent a finding of neglect or abuse.' " This citation does not support that proposition. The *Parham* court was addressing whether a parent could voluntarily commit his child to a mental hospital and stated only that "[i]n defining the respective rights and prerogatives of the child and parent *in the voluntary commitment setting,* we conclude that our precedents permit the parents to retain a substantial, if not the dominant, role in the decision, absent a finding of neglect or abuse . . . . " (*Id*. at p. 604 [emphasis added].)

3.     *Raphael's Right to Decide With Whom His Daughter Associates Does Not Trump the Court's Authority to Act in M.'s Best Interests*

Raphael argues that the court's order would force him to provide minor's counsel with access to his daughter and, therefore, violated his right to determine with whom his daughter associates. It appears that he is raising an "as applied" challenge to Family Code section 3151 which gives minor's counsel the right to "[r]easonable access to the child."[4] (Family Code, § 3151, subd. (c)(1).) He argues that this statute infringes on his constitutional right as a "fit parent" to determine with whom his daughter may associate. "In determining a statute's constitutionality, we start from the premise that it is valid, we resolve all doubts in favor of its constitutionality, and we uphold it unless it is in clear and unquestionable conflict with the state or federal Constitutions. [Citation.]" (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 423.)

A parent's right to control with whom his child associates stems from the Fourteenth Amendment's provision that no state shall " 'deprive any person of life, liberty, or property without due process of law.' " (*Troxel v. Granville* (2000) 530 U.S. 57, 65 (*Troxel*).) The substantive component of this due process clause " 'provides heightened protection against government interference with certain fundamental rights and liberty interests,' " which includes the right of parents to make decisions concerning the care, custody and control of their children. (*Id.* at p. 65.) In

---

[4]     Raphael generally argues that he is raising an "as applied" challenge to all of the statutes "that authorize, and are incorporated into, the order" appointing minor's counsel. The following statutes are referenced in the form order appointing minor's counsel: Family Code, §§ 3150, 3151, 3151.5, 3152; Government Code § 77002; and California Rules of Court, Rules 5.240, 5.241, and 5.242.

addition, there is a "presumption that a fit parents will act in the best interest of his or her child. [Citation.]" (*Id.* at p. 69.) Encompassed within "a parent's liberty interest in the custody, care and nurture of a child is . . . ' "the right to determine with whom the[] child[] should associate. [Citation.]" ' [Citation.]" (*Herbst v. Swan* (2002) 102 Cal.App.4th 813, 819.)

However, this right is not unlimited. "California has recognized situations in which the independent rights of children may provide the state with a need to interfere with the parental liberty interest at issue . . . . " (*Herbst v. Swan, supra,* 102 Cal.App.4th at p. 820.) For example, "it has long been recognized that a trial court has the responsibility to protect the rights of a minor who is a litigant in court [citations], and in this role the court has the inherent authority to make decisions in the best interests of the child, even if the parent objects. [Citation.]" (*Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 49.) "The principle of the best interests of the child is the sine qua non of the family law process governing custody disputes." (*Banning v. Newdow* (2004) 119 Cal.App.4th 438, 447.) "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

Raphael relies on case law addressing the visitation rights of relatives, and contends that "[i]f an association with a child's own blood relatives cannot be forced on a child against the parent's wishes, certainly an association with a complete stranger

9

cannot be forced on M." (See *Troxel, supra,* 530 U.S. at p. 65; *Punsly v. Ho* (2001) 87 Cal.App.4th 1099 (*Punsly*) overruled on other grounds by *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226, fn. 4.) However, this is not a case about visitation but about counsel's more limited right to meet with the child in order to gather facts to determine the child's best interests within the context of a custody dispute.

Raphael acknowledges that an infringement on his liberty interest may be permissible if it passes the strict scrutiny test providing that the law is narrowly tailored and justified by a compelling state interest. (*Punsly, supra,* 87 Cal.App.4th at p. 1107.) Here, Family Code section 3151, subdivision (c)(1) is justified by a compelling state interest in protecting a child's best interests in a custody dispute. When the trial court appoints minor's counsel, such counsel cannot adequately represent the child's interests without meeting with the child in order to interview and observe her. Counsel's "right to reasonable access" to the child is thus necessary to the minor's legal representation. Although there is a presumption that fit parents act in the best interests of their children, preventing minor's counsel from meeting with M. would patently not be in M.'s best interests as this would interfere with counsel's ability to provide competent representation for M. (*Troxel, supra*, 530 U.S. at p. 67.) Accordingly, Family Code section 3151, as applied to the facts presented, did not unconstitutionally infringe on Raphael's due process rights as a fit parent to decide who may associate with his daughter.[5]

---

[5] Raphael's argument also hinges on whether minor's counsel's "access" to a child in connection with court proceedings constitutes an "association" with that child under

10

4. *Raphael's Right to Protect M.'s Medical Privacy*

Raphael generally argues that the court violated M.'s right to privacy by "giving" minor's counsel the right to access minor's medical records and the right to assert or waive the minor's right to privacy. This right is accorded to minor's counsel pursuant to CRC Rule 5.242, subdivisions (i)(6) and (11).[6] Raphael appears to be challenging this statute's constitutional validity as applied to M.'s circumstances, but does not provide any specific analysis of the facts at hand.

An as applied challenge requires the appellant to make a factual analysis of the individual case. (*Banning v. Newdow, supra,* 119 Cal.App.4th 438 at p. 457.) Here, Raphael only makes the above broad argument, citing to case law for the general proposition that minors have a right to privacy in their medical information. It is unclear from this argument what about M.'s circumstances makes the application of

the Due Process Clause. A parent's interest in controlling with whom a child associates has been recognized by the United States Supreme Court as arising from a parent's interest in "cho[osing] [] a child's social companions" in order to control "the influence of personal associations on the development of the child's social and moral character." (See, e.g., *Troxel, supra,* 530 U.S. at p. 78 [Souter, concurring opn.].) In accordance with this understanding, Raphael's cited case law addresses a child's interactions in social contexts, such as court-ordered visitation between a child and relatives. (*Ibid.*; *Punsly v. Ho, supra,* 87 Cal.App.4th 1099; *Herbst v. Swan, supra,* 102 Cal.App.4th 813.) We cannot say that minor's counsel's right to limited access to a child in connection with court proceedings makes the counsel a social associate such that her contact with the minor affects this constitutional right.

[6] Rule 5.242, subdivision (i)(6) provides that minor's counsel has the right to "[a]ccess the child's medical, dental, mental health, and other health-care records . . . ." Subdivision (i)(11) of this statute provides that minor's counsel may "[a]ssert or waive any privilege on behalf of the child."

CRC Rule 5.242 to her unconstitutional. We, therefore, reject this claim as not properly supported by adequate analysis.[7] (*People v. Bonin* (1989) 47 Cal.3d 808, 857, fn. 6.)

     5.     *The Trial Court Did Not Abuse Its Discretion In Appointing Minor's Counsel*

Raphael contends that the court abused its discretion in appointing minor's counsel because none of the factors set forth by CRC Rule 5.240, subdivision (a) applied. However, at least several factors favored the appointment of minor's counsel here. First, the evidence showed that the issue of child custody was highly contested and protracted: (1) the litigation has been pending for over four years, (2) the parties contested not only the division of custody but also simple procedural matters such as setting a party's deposition, and (3) the parties had adopted polar positions on what kind of services and treatment their child needs, if any, which affects the court's custody decision.

Second, due to Lopez's prior experience as minor's counsel in cases involving children with special needs, it was likely she would provide a useful perspective to the court with respect to the parents' dispute over whether M. has special needs. Third, Lopez was available to work on this case as demonstrated by her acceptance of the court's appointment. Lastly, the court properly indicated that it believed M.'s best interests would be served if she had an independent voice, presumably because the

---

[7]    Raphael has also not met his burden of showing that Rule 5.242 is facially unconstitutional. (*Rupf v. Yan, supra,* 85 Cal.App.4th at pp. 423-424 [it is appellant's burden to demonstrate that a statute's provisions " 'inevitably pose a present total and fatal conflict with applicable constitutional prohibitions . . . . [I]f the court can conceive of a situation in which the statute can be applied without entailing an inevitable collision with constitutional provisions, the statute will prevail. [Citation.]' "])

parties' perceptions of M. and her needs were so different that minor's counsel was needed to provide an unbiased perspective to aid the court in its decision.  Therefore, the trial court did not abuse its discretion in appointing Lopez as minor's counsel for M.

6. *Requiring Raphael to Advance $100,000 to Minor's Counsel Was Not An Abuse of Discretion*

Raphael contends that the order requiring him to advance $100,000 to minor's counsel was an abuse of discretion because the completion of trial was scheduled for October 25, 2013, and Lopez could not have billed up to $100,000 during the time between her appointment and the end of trial.  However, Raphael also acknowledges that counsel's appointment would last until "the child reaches the age of majority or is emancipated" unless she were "relieved" or "removed" at an earlier time by the court. (CRC Rule 5.240, subdivision (f).)  Accordingly, the relevant time frame extended beyond the end of trial.

### *DISPOSITION*

The order is affirmed.  The Petition for Writ of Mandate is dismissed as moot.

Respondent Tammy Metzger shall recover her costs on appeal.

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| In re the Marriage of TAMMY and RAPHAEL METZGER.<br><br>TAMMY METZGER,<br><br>       Respondent,<br><br>       v.<br><br>RAPHAEL METZGER,<br><br>       Appellant.<br>_____<br>EVE LOPEZ,<br><br>       Petitioners,<br><br>       v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>       Respondent;<br><br>RAPHAEL METZGER,<br><br>       Real Party in Interest. | B251861<br><br>(Los Angeles County<br>Super. Ct. No. ND062399)<br><br><br>ORDER<br>(1) MODIFYING OPINION<br>(2) DENYING PETITION FOR<br>     REHEARING<br>(3) CERTIFYING OPINION<br>     FOR PUBLICATION<br><br><br>B252152<br><br><br>[NO CHANGE IN JUDGMENT] |


THE COURT:

      The opinion filed in this matter on March 4, 2014 is hereby modified as follows:

On page 14, lines 1 and 2, delete the Disposition and substitute the following in its place and stead:

The order is affirmed. The Petition for Writ of Mandate is dismissed as moot. Respondent Tammy Metzger and Petitioners Eve Lopez and M.M., a minor, shall recover their costs in these appellate proceedings.

The Petition for Rehearing filed herein by appellant on March 19, 2014 is hereby denied.

When the opinion in this matter was originally filed, it was not certified for publication. For good cause now appearing, it is hereby ordered that the opinion in this matter, filed on March 4, 2014 is certified for publication.

[NO CHANGE IN JUDGMENT]